**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
**J. Mark Coulson**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
**BALTIMORE, MARYLAND 21201**
**P:(410) 962-4953 — F:(410) 962-2985**

April 14, 2025

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:  *Lateef W. v. Frank Bisignano, Social Security Administration*
     Civil No. 1:25-cv-01984-JMC

Dear Counsel:

Lateef Wilson ("Plaintiff") petitioned this Court on June 20, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying his claims for disability insurance benefits ("DIB") and Social Security Income ("SSI"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 9, 11, 15). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will remand ALJ's and Appeals Council's determinations for the reasons explained below.

## I.    Procedural Background

Plaintiff filed his Title II application for DIB and SSI on November 12, 2020, alleging disability as of November 1, 2020. (Tr. 256-262).[1] Plaintiff's claims were denied initially on July 22, 2021, and again upon reconsideration on March 3, 2023. *Id.* at 136-145; 151-153-164. On March 29, 2023, Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 165-66. ALJ Scott Massengill conducted a telephone hearing on May 21, 2024. *Id.* at 14-36. ALJ Massengill subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame on June 27, 2024. *Id.* The Appeals Council affirmed the ALJ's decision on April 22, 2025. *Id.* at 1-6.

## II.   The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ (and subsequently the Appeals Council) followed the five-step sequential evaluation of disability set forth in the Secretary's

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 6) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability, November 1, 2020. (Tr. 19). At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments: "schizophrenia, depression, anxiety, post-traumatic stress disorder ("PTSD"), osteoporosis, polyarthropathy, and disorders of the lumbar spine" *Id.* at 20.

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.*; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). In assessing Plaintiff's step-three impairments, the ALJ opined:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, 12.06, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

(Tr. 21). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T] he undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except frequently climb ramps or stairs. Occasionally able to climb ladders, ropes, or scaffolds. Frequently able to balance, stoop, kneel, crouch, or crawl. Would need to avoid work at unprotected heights. Would be able to understand, and carry out

simple instructions and routine, repetitive tasks. Able to apply commonsense understanding to carry out detailed, but uninvolved instructions. Avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side by-side and the work of one affects the work of the others). Would be able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodate by normal breaks. Occasionally able to change activities or work settings during the workday without it being disruptive. Occasionally able to deal with changes in a routine work setting. Able to have frequent interaction with supervisors, coworkers, and/or the general public.

*Id.* at 24. The ALJ further concluded that Plaintiff had past relevant work as a barber and a small business owner. *Id.* at 29.

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) a floor waxer with 100,000 jobs nationally; (2) produce packer with 10,000 jobs nationally; and (3) hand packager with 40,000 jobs nationally. *Id.* at 31. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from November 1, 2020. *Id.*

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's and Appeals Council's RFC determination for failing to build a logical bridge from the medical evidence to the RFC. (ECF Nos. 9, 15). For the reasons that follow, the ALJ's and Appeals Council's RFC determination is not supported by substantial evidence. As such, I will remand the case.

a.  The ALJ's and Appeals Council's RFC Determination is Not Supported by Substantial Evidence

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No.

3

CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)).  The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC.  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work."  *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted).  As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it."  *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311).  Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion."  *Id.* at 388 (cleaned up).  The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188.  A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."  *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).

i.       *The ALJ and Appeals Council Improperly Explained Plaintiff's RFC*

A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). Plaintiff correctly points out that in determining a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  An RFC analysis requires (1) evidence, (2) a logical explanation, and (3) a conclusion. *Id.* Plaintiff is entitled to a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence" *Id.* A "logical bridge" connecting the evidence and conclusion is "shorthand" for "the most minimal of articulation requirements. *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024). Even when an ALJ does not assess exertional capabilities on an explicit function-by-function basis, there is no per se rule requiring remand when an ALJ does not perform such an analysis. *Mascio*, 780 F.3d at 636. Indeed, "the driving consideration is whether the ALJ's analysis allows for meaningful judicial review," *Lail v. Kijakazi*, No. 21-2133, 2022 WL 1711809, at *1 (4th Cir. May 27, 2022). "Thus . . . remand is appropriate only where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as when an ALJ fails to assess a claimant's capacity to perform relevant functions or does not resolve material disputes in the record." *Delesline-Meggett v. Comm'r of Soc. Sec.*, No.

4

21-1859, 2023 WL 8230802, at *1 (4th Cir. Nov. 28, 2023).

To that end, Plaintiff argues,

The decision fails to explain how Plaintiff's severe mental impairments, inclusive of schizophrenia, depression, anxiety, and PTSD could be reconciled with an ability to sustain the demands of full-time work. The record consistently documents significant psychiatric symptoms including auditory and visual hallucinations, paranoid ideation, and anxiety. The ALJ himself acknowledged these impairments as severe (Tr. 20), yet his RFC discussion offers no narrative explanation of how the associated symptoms were factored into his findings (Tr. 24-29). Indeed, the medical evidence of record is replete with abnormal mental status findings that the ALJ failed to meaningfully address. Exhibit 8F alone documents numerous encounters showing that Plaintiff continued to experience auditory hallucinations, delusions, and paranoia despite treatment (Tr. 598, 607, 616, 631, 633). The ALJ mentioned some of these records but never analyzed how such ongoing psychotic features would impact Plaintiff's capacity to remain focused, maintain attendance, or interact consistently in a workplace. The omission is particularly striking because the ALJ himself conceded that Plaintiff would "become distracted" and incorporated said limitation within his RFC assessment (Tr. 24).

(ECF No. 9 at 10).  Having carefully reviewed the record, the Court is persuaded that the ALJ's narrative warrants remand.  While the ALJ did summarize Plaintiff's medical records in an analysis about his mental impairments, he failed to assess how the RFC determination accounted for the inconsistent nature of his impairments, namely schizophrenia.  As Plaintiff puts it, "the ALJ failed to identify any medical or testimonial evidence supporting the conclusion that such off-task periods could be neatly "accommodated by normal breaks" and would only occur after "2 hours"… There is simply no medical opinion or other evidence suggesting that auditory hallucinations occur on a two-hour cycle or that their disabling effects would dissipate within the fifteen-minute break periods of a standard workday." *Id.* To that end, the Court agrees that the ALJ failed to include a sufficient discussion to at least "glean the ALJ's reasoning." *See James T. v. Kijakazi*, No. CV AAQ-22-0574, 2023 WL 1997471, at *4 (D. Md. Feb. 13, 2023).

The Commissioner reiterates the ALJ's medical summary and emphasizes that the ALJ referenced Plaintiff's treatment with Abilify, but the Commissioner too fails to articulate how a two hour limitation and other breaks would support Plaintiff's schizophrenia, anxiety, psychosis, and PTSD symptoms. (ECF No. 11). However, as Plaintiff points out, the record demonstrates multiple conflicts concerning the state of Plaintiff's symptoms, including the frequency of his hallucinations and paranoia symptoms. Tr. 598, 607, 616, 631, 633, 708-709; *see also Lewis*, 858 F.3d at 869 (cautioning that an ALJ may not "cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding").  Moreover, it is true that "the Court 'may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.'" *Carroll v. Colvin*, Civil No. TMD 14–921, 2015 WL 5008738, at *7 (D. Md. Aug. 20, 2015) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007)).

Therefore, the Court finds that the ALJ failed to build a logical bridge such that the Court may engage in meaningful review.  Thus, I will remand the case for further proceedings.


### V.   Conclusion

In sum, the Court agrees with Platiniff that the ALJ and subsequently the Appeals Council inadequately explained Plaintiff's RFC determination and underlying reasoning.  In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED and REMANDED.  The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.


Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge